# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HAKEIM ROBINSON, | : |
| | : |
| Plaintiff, | : CIVIL NO. 3:CV-04-2777 |
| | : |
| vs. | : (CHIEF JUDGE VANASKIE) |
| | : |
| ROBERT SHANNON, ET AL., | : |
| | : |
| Defendants. | : |

## M E M O R A N D U M

## I.   INTRODUCTION

Hakeim Robinson filed this pro se civil rights action on December 22, 2004, pursuant to 42 U.S.C. § 1983.  He is currently confined at the State Correctional Institution at Frackville (SCI-Frackville), Pennsylvania.  Named as Defendants are Robert Shannon, Superintendent at SCI-Frackville, and the following SCI-Frackville medical personnel: Barbara G. Malewski, Chief Health Care Administrator; Dr. Scott Sterling, D.O.; and Joan Gibbons, R.N.

On February 3, 2005, an Order was issued directing service of the complaint and denying a motion for the appointment of counsel which had previously been filed by Plaintiff.  (Dkt. Entry 8.)  Presently pending are motions to dismiss filed by Dr. Sterling (Dkt. Entry 10) and Defendants Shannon, Malewski and Gibbons (Dkt. Entry 26).  Also pending is a second motion for appointment of  counsel (Dkt. Entry 16), and a motion to amend the complaint.  (Dkt. Entry

29.)  For the reasons that follow, Plaintiff's motions for counsel and to amend will be denied, and the motions to dismiss will be granted.

## II.   BACKGROUND

In his complaint Robinson states that he injured his ankle at SCI-Frackville in August of 2004.  He went to the prison infirmary and was told by Defendant Gibbons, a registered nurse, that his ankle was sprained.  Gibbons then provided Robinson with an ice pack, Motrin and an ace bandage.  Robinson claims that he was not offered crutches or an x-ray to determine the extent of his injuries, even though he had to hop "over 100 yards outside to get to medical." (Dkt. Entry 1, Compl. at 3.)

On August 16, 2004, Robinson again signed up for sick call because he noticed no difference in the pain or swelling of his ankle.  He requested crutches and that an x-ray be performed, but only received a cane on that date.  He claims that the cane was useless.  He acknowledges that an x-ray was performed four (4) days later on August 20, 2004.

Several weeks later Robinson signed up for sick call because he had not heard the results of the x-ray taken on August 20, 2004.  He was seen by Ms. Ellsworth, a physician's assistant, who did not know what was wrong with his ankle.  At that time Robinson received a prescription for Motrin, which he had been previously given for pain associated with the prior amputation of two toes on his left foot.

The following week, a second x-ray of his ankle was taken.  A few weeks later, he again

signed up for sick call to inquire as to the x-ray results.

Robinson alleges that he did not receive the correct diagnosis of his ankle injury until he saw Dr. Sterling on October 18, 2004, who informed him that his ankle had been fractured. Sterling noted the swelling and discoloration, and referred to the injury as an "old fracture." (Id. at 4.)

Robinson contends that Defendant Shannon was deliberately indifferent to his medical needs because he was aware of the deficient and inadequate health care the medical department provides to inmates. He claims that Nurse Gibbons was deliberately indifferent in that she mis-diagnosed his condition as a sprain, and failed to order an x-ray and crutches. He also contends that he should have seen a doctor before his visit with Defendant Sterling on October 18, 2004. He further claims that the "professional assessment was well below marginal expectancy" when Defendant Gibbons mis-diagnosed his condition as a sprain, and then Defendant Sterling stated that it was best to allow the fractured portion of the bone to dissolve. (Dkt. Entry 1, Compl. at 5.) As relief Robinson requests compensatory damages.

### III. DISCUSSION

#### A. Motion for appointment of counsel

On March 16, 2005, Robinson filed his second motion seeking the appointment of counsel. (Dkt. Entry 16.) In the pending motion Robinson reiterates the grounds for the appointment of counsel presented in his initial motion: his inability to afford/obtain counsel, the

limitations prison imposes upon his ability to litigate the case and the complexity of the issues involved. Robinson has responded to the motion to dismiss in a comprehensible manner. As explained below, the averments of the Complaint reflect a disagreement as to the level of medical care received, but do not support deliberate indifference to a serious medical need. Accordingly, the instant motion will be denied.

### B. Motion to amend complaint

On April 7, 2005, Plaintiff filed a document entitled "Addendum" (Dkt. Entry 29) which the Clerk of Court has docketed as a motion to amend the complaint in this action. In the motion, Plaintiff seeks to raise new claims, including retaliation, denial due process, violation of the free exercise of religion clause of the First Amendment, and unconstitutional conditions of confinement. These claims are asserted against individuals not named originally as defendants in this action, including Corrections Officer Reed.

It is evident that Plaintiff is not seeking to clarify or amplify the deliberate indifference claim originally presented in this matter. On the contrary, his "addendum" pertains to matters occurring since this action was instituted. Pursuant to Federal Rule of Civil Procedure 15(d), "[u]pon motion of a party the court may . . . permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Rule 15(d) gives district courts broad discretion in allowing supplemental pleadings in the interests of justice and judicial economy. See Keith v.

4

Volpe, 858 F.2d 467, 473 (9th Cir. 1988.)

In the instant case, the supplementation of the original complaint will not be permitted. First, the supplemental pleading does not concern matters that relate to the claims originally asserted. For example, Plaintiff does not complain of continuing inadequate medical attention. Instead, he rather seeks to add new defendants with regard to new claims which are more properly pursued in a separately filed civil rights action. To permit Plaintiff to add the unrelated claims would allow Plaintiff to circumvent Rule 20(a) of the Federal Rules of Civil Procedure, which authorizes joinder of claims and defendants "arising out of the same transaction, occurrence, or series of transactions or occurrences" that involve questions of law or fact common to all defendants. No such commonality is present here. Furthermore, to permit Plaintiff to insert into this action new claims against additional defendants would allow him to circumvent the filing fee requirements of the Prison Litigation Reform Act. Accordingly, leave to amend the complaint will be denied.

### C.     Motions to dismiss complaint

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted . . . ." A motion to dismiss should not be granted if "under any reasonable reading of the pleadings, the plaintiff[ ] may be entitled to relief . . . ." Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). In making that decision, all well-pleaded allegations in the complaint must be accepted as true, Maio v Aetna,

Inc., 221 F.3d 472, 481-82 (3d Cir. 2000), and reasonable inferences from the averments of the complaint must be drawn in the plaintiff's favor. See United States v. Occidental Chemical Corp., 200 F.3d 143, 147 (3d Cir. 1999). The court, however, need not accept "bald assertions" or "legal conclusions." Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997). Likewise, the court need not "conjure up unpled allegations or contrive elaborately arcane scripts" in order to breathe life into an otherwise defective complaint. Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988). A district court should provide leave to amend "when amendment could cure the deficiency and would not be inequitable." Grayson v. Mayview State Hospital, 293 F.3d 103, 106 (3d Cir. 2002). A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover, however, is properly dismissed without leave to amend. Id.; see also Estelle v. Gamble, 429 U.S. 97, 107-08 (1976).

In order to establish a claim against Defendants for inadequate medical care under § 1983 based on the Eighth Amendment, Robinson must show "(i) a serious medical need, and (ii) acts or omissions . . . that indicate deliberate indifference to that need." Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety. . . ." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a prison official's conduct does not constitute deliberate indifference unless it is also accompanied by the requisite mental state. Id. Accordingly, a complaint that a physician "has

6

been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. . . ." Estelle v. Gamble, 429 U.S. 97, 106 (1976). "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993.)

### 1. Dr. Sterling's Motion to Dismiss

Defendant Sterling has filed a motion to dismiss the complaint, arguing that it contains no factual allegations supporting the contention that Dr. Sterling was deliberately indifferent to Plaintiff's medical needs. Dr. Sterling points to the complaint's averments that Plaintiff did not see Dr. Sterling until the week of October 18, 2004, when Plaintiff received "the correct diagnosis of [his] injury." (Dkt. Entry 1, Compl. at 4.) This was the first time Defendant Sterling had any contact with Plaintiff with regard to this injury. There are simply no allegations that Sterling had any knowledge or involvement in Plaintiff's prior treatment or that he in any way had any knowledge of any previously alleged inappropriate treatment.

At best, Plaintiff takes issue with Dr. Sterling's treatment following his diagnosis. Sterling

informed Plaintiff that because his injury appeared to be an "old fracture," the method of treatment was to allow the bone to dissolve, and that this procedure might take some time.  This claim is nothing more than a disagreement with a physician's treatment.  Plaintiff has not suggested that there was some other way of treating the old fracture.  Nor has he shown that Dr. Sterling refused to prescribe pain medication.  The fact that Plaintiff may have wanted more x-rays or a different type of treatment does not change this outcome.  While Robinson may not agree the course of treatment, he has not presented, and cannot present under these circumstances, a viable cruel and unusual punishment claim against Dr. Sterling.  Accordingly, Dr. Sterling's motion to dismiss will be granted.

### 2. Corrections Defendants' Motion to Dismiss

Defendants Shannon, Malewski and Gibbons move to dismiss the complaint on the basis of failure to exhaust administrative remedies as required under the Prison Litigation Reform Act pursuant to 42 U.S.C. § 1997e(a).  Section 1997e(a) provides that no action shall be brought with respect to prison conditions by a prisoner until such administrative remedies as are available are exhausted.

The Pennsylvania Department of Corrections has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the course of confinement. Under Department Policy DC-ADM 804, after an attempt to resolve any problems informally, an inmate may submit a written grievance to the prison Grievance Coordinator for initial review.  If

an inmate is dissatisfied with the response, he can appeal the grievance to the Facility Manager, who is the Superintendent of the institution where he is confined. If the inmate is dissatisfied with the Superintendent's response, there is a final level of review by the Secretary's Office of Inmate Grievances and Appeals. (Dkt. Entry 32, Appendix, Ex. A".)

In his complaint Plaintiff acknowledges the existence of a grievance procedure at SCI-Frackville. He further states that he has filed a grievance with regard to the allegations set forth in his complaint. Defendants move to dismiss the complaint on the ground that Plaintiff did not complete the grievance procedure with regard to his claims. In support of their argument they submit the declaration of Tshanna Kyler, an Administrative Officer 2 in the Secretary's Office of Inmate Grievances and Appeals. (Id., Kyler Decl. ¶ 1.) Kyler states that Plaintiff filed two grievances concerning the August 2004 medical treatment of his ankle. The numbers assigned to the grievances were 101740 and 102614. While Plaintiff appealed the initial result of both grievances, he failed to properly complete the appeals through final review.

With regard to grievance 101740, Plaintiff's appeal to the final level of review was dismissed due to his failure to include all of the required documents needed for review. Prior to the dismissal, he was sent a letter informing him of the omission. While Plaintiff attempted to appeal a second time, he again failed to forward the required documents. Thus, the appeal process with regard to this grievance was not exhausted.

In grievance 102614, Plaintiff appealed to the Secretary's Office but failed to include

9

evidence of his appeal to the Superintendent and the Superintendent's response. He was informed of the need to complete the initial appeal to the Superintendent. Plaintiff submitted no further response to the Secretary's Office with regard to this appeal. Kyler states in her declaration that a review of the department's records reveals that an appeal to the Superintendent had not been filed by Plaintiff.

In opposing Defendants' motion, Plaintiff agrees that with regard to grievance 101740, he did not initially send the required documents with his appeal to the Secretary's Office. However, after being informed of his omission, he states that he resubmitted the documents. He also acknowledges being advised following his second submission that his appeal was still missing the appropriate documents. There is no allegation by Plaintiff that he ever attempted to again submit the proper forms with his appeal. Plaintiff argues that in his view his resubmission of documents following the first notification from the Secretary's Office was complete and that someone must have "removed" the documents. Even if this were true, it does not relieve him of the responsibility of notifying the Secretary's Office and resubmitting the required documents once he received the second notification from the Secretary's Office that his appeal remained incomplete and could not be processed.[1]

---

[1] It should be noted that Plaintiff claims he sent the Secretary's Office the same documents he attached to his complaint. Significantly, the complaint does not attach any evidence of any appeal pursued to the Secretary's Office of Inmate Grievances and Appeals. Thus, accepting Plaintiff's averment as true reinforces the conclusion that administrative

Plaintiff argues that he was unable to comply with the Secretary's Office request regarding grievance 102614 because the Superintendent did not respond to a grievance he allegedly filed.  This does not save Plaintiff from the exhaustion requirement in this case for the following reasons.  Plaintiff appealed grievance 102614 to the Secretary's Office.  He failed to include a copy of his appeal to the Superintendent <u>and</u> the Superintendent's response.  He was notified of the omission by the Secretary's Office.  No further response was submitted by Plaintiff to the Secretary's Office.  Plaintiff admits this.  While he contends that he could not produce the Superintendent's response because he never received one, he could still have responded to the Secretary's letter by producing a copy of his appeal and explaining that the Superintendent never responded.[2]  Plaintiff, however, did nothing and his appeal was in turn dismissed by the Secretary's Office.  Based on the foregoing, it is clear that Plaintiff's claims against the Corrections Defendants are subject to dismissal for failure to exhaust administrative remedies.

Even if the Court were to find exhaustion with regard to these claims, dismissal of the complaint would still be warranted for the following reasons. With regard to Defendant Shannon,

---

remedies were not exhausted.

[2] Kyler's declaration states that a search of the records reveals that no appeal on grievance 102614 was filed by Plaintiff with the Superintendent.  (Dkt. Entry 32, Kyler Decl. ¶ 14.)

it is clear that Robinson only names him as a defendant in this action due to his position as Superintendent at SCI-Frackville.  Liability may not be imposed under § 1983 on the traditional standards of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988).  Further, even if Robinson alleged that Shannon had some personal involvement in the alleged wrongs, it is well-established that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when the inmate is already receiving treatment from the prison's medical staff.  See Durmer, 991 F.2d at 69.

With regard to the remaining defendants, Robinson's averments rise to nothing more than a disagreement with the medical treatment he received, or at best negligence, which is not actionable under § 1983.  Every time Robinson alleges that he requested to be seen at sick call for his ankle injury, he was examined and treated.  The medical department never refused to see him.  During his three infirmary visits in August of 2004, he was given an ice pack, Motrin, an ace bandage, an x-ray and a cane.  While he may have desired that an x-ray be performed on his first visit instead of his third visit, and while he may have wanted crutches instead of a cane, these are mere disagreements with the treatments ordered by Defendants and do not support an inference of deliberate indifference.

### IV. CONCLUSION

For the reasons set forth above, this action will be dismissed.   An appropriate Order is attached.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HAKEIM ROBINSON,                           :
                                           :
       Plaintiff,                      :    CIVIL NO. 3:CV-04-2777
                                           :
   vs.                                     :    (CHIEF JUDGE VANASKIE)
                                           :
ROBERT SHANNON, ET AL.,                    :
                                           :
       Defendants.                     :

## O R D E R

**NOW, THIS 30th DAY OF SEPTEMBER, 2005,** in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS**:

1. Plaintiff's motion for counsel (Dkt. Entry 16) is **denied**.

2. Plaintiff's motion to amend (Dkt. Entry 29) is **denied**.

3. Defendant Sterling's motion to dismiss (Dkt. Entry 10) is **granted** and the claims against him are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

4. The motion to dismiss filed by Defendants Shannon, Malewski and Gibbons (Dkt. Entry 26) is **granted** and the claims against them are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

5. The Clerk of Court is directed to close this case.

<u>**s/ Thomas I. Vanaskie**</u>
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

2